**Luis FERRAN, as President of Local 241, Transport Workers Union of America, AFL–CIO and John Lawe, as President of Transport Workers Union of America, AFL–CIO, Petitioners,**

v.

**COLUMBIA UNIVERSITY IN the CITY OF NEW YORK, Respondent.**

**No. 88 Civ. 3464 (RWS).**

United States District Court, S.D. New York.

Sept. 13, 1988.

ersity ("Columbia") dismissed security guard Willie Skelton ("Skelton") for just cause. For the reasons set forth below, the petition is denied, and the award will be affirmed.

*Facts*

Skelton was employed as a security guard for Columbia from October 24, 1968 until his discharge on October 27, 1987. As a security guard, Skelton's employment relationship with Columbia was governed by the collective bargaining agreement negotiated between Columbia and Union and running from October 1, 1986 through September 30, 1989. Dispute resolution under the collective bargaining agreement takes the form of three administrative or "grievance steps" and arbitration of unresolved disputes. The collective bargaining agreement also provides that no salary will be deducted from guards while on jury duty.

Skelton had been summoned to serve as a grand juror in the October/November term of the special Narcotics Grand Jury for New York County running from October 13, 1987 through November 6, 1987. He presented his jury notice to his supervisor and began serving on October 13.

Director of Security at Columbia, Dominick Moro ("Moro"), either personally or through an agent, contacted the Grand Jury Warden to verify Skelton's attendance. At that time, the Grand Jury Warden informed him that jurors had a choice of serving on either morning or afternoon panels, and that Skelton had opted to serve in the afternoons. Afternoon sessions are conducted from 2 to 5 p.m.

Thereafter, Moro directed a Lieutenant Conlon to contact Skelton and inform him that he would be expected to report to work from 7:45 a.m. until noon while he was performing jury service. Conlon did so on October 21, 1987. During the phone conversation, Conlon asked Skelton his jury service hours. Skelton refused to answer the question. However, on the following day, Skelton called a Captain Lynch regarding the demand that he report to work. Lynch replied that he had been instructed to mark Skelton absent; he suggested that

O'Donnell & Schwartz, New York City, for petitioners; Joel C. Glanstein, of counsel.

Putney, Twombly, Hall & Hirson, New York City, for respondent; Michael T. McGrath, of counsel.

OPINION

SWEET, District Judge.

Petitioners Luis Ferran, as president of Local 241, Transport Workers Union of America, AFL–CIO ("Local 241"), and John Lawe, as president of the Transport Workers Union of America ("TWU") (collectively the "Union") have petitioned this court to vacate the opinion and award of Arbitrator Steven Goldsmith ("Goldsmith" or the "Arbitrator"), which held that Columbia Univ-

Skelton speak with the Moro's assistant to straighten the matter out. Skelton replied that he would remain on jury duty until he had finished.

On October 23, Moro, by letter, issued a final warning to Skelton. It stated:

> This is to advise you that, effective immediately, you are required to report to work as normally scheduled any time that your service on the Grand Jury is not required during your normal scheduled working hours. Accordingly, you will be expected to report for work on Monday, October 26, 1987, and any scheduled day thereafter if your services are not required for jury duty on such day or on a part of such day. .
>
> Failure to comply with this reasonable instruction and continued refusal on your part to report for work shall result in immediate termination of your employment.

This letter was delivered to Skelton in the Grand Jury room while he was serving. Skelton did not report for work on October 26, and by letter of October 27, 1988, was discharged.

### Prior Procedures

To contest Skelton's termination, the Union followed the administrative grievance procedures pursuant to the collective bargaining agreement on Skelton's behalf. When no resolution was achieved through these means, the parties submitted the claim to arbitration. Local 241 and Columbia took part in an arbitration hearing before Goldsmith on January 5, 1988. On February 6, 1988, Goldsmith issued an opinion and award declaring that Skelton was discharged for good cause and upholding the discharge decision.

On April 21, 1988, the Union, through its officers, filed a petition to vacate the arbitrator's award in the Supreme Court of the State of New York, New York County. A petition for removal and a cross petition to affirm the arbitrator's decision was filed by Columbia before this court on May 18, 1988, jurisdiction founded upon section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Oral argument was had before this court on the issue of the arbitrator's award on June 17, 1988.

### Discussion

Ferran and Lawe, as representatives of the Union and on Skelton's behalf, have petitioned to have the arbitrator's award set aside on the grounds that it contravenes public policy and that it exceeds an arbitrator's power under the collective bargaining agreement.

The parties agree that this case is controlled by *United Paperworkers International Union v. Misco, Inc.*, — U.S. —, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The Court in *Misco* collected and clarified a line of cases addressing a district court's power to review a decision rendered by an arbitrator pursuant to a collective bargaining agreement. In discussing *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), *Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Court stated that:

> The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute. Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those finding simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but

the parties having authorized the arbitrator to give menaing to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.... [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Misco, supra,* 108 S.Ct. at 370–71.

Based on this statement, the Union's contention that the arbitrator exceeded his power under the collective bargaining agreement *per se* must fail. The Union contends that Goldsmith exceeded his power by violating the spirit of New York Judiciary Law § 519 which provided that an employee may not be discharged for being absent from work due to jury duty. In effect, this argument is part and parcel of the Union's second argument, namely that Skelton's discharge violated public policy considerations. This claim will be discussed below. The only claim in the Union's moving papers related to the collective bargaining agreement itself is that "Columbia had promulgated no guidelines concerning reconciling worktime and jury service, nor had it ever conducted negotiations with the Union about any such guidelines or policies." [1]

■ In light of *Misco*'s holding that an arbitrator's interpretation of a labor contract is not to be disturbed, the Arbitrator's reading of the agreement, even if in error, will not be overturned. The arbitrator's determination that the events surrounding Skelton's jury duty constituted "cause" within the meaning of the collective bargaining agreement, must be affirmed.

■ However, while a court's power to review an arbitrator's decision generally is limited, there is an exception to this rule: a court may refuse to enforce an arbitrator's award under a collective bargaining agree-

ment if the award contravenes public policy. *Misco, supra,* 108 S.Ct. at 373 (discussing *W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)). Thus, the Union argues that Skelton's discharge was directly related to his jury service and thus in violation of the public policy encouraging jury duty and prohibiting employers from terminating those who serve as jurors.

New York Judiciary Law § 519 provides:

Any person who is summoned to serve as a juror under the provisions of this article and who notifies his employer to that effect prior to the commencement of his term of service, shall not, on account of his absence from employment by reason of such jury service, be subject to discharge or penalty.

This law evidences a policy promoting jury service on the part of prospective jurors by ensuring that they cannot be penalized for absence from work.

■ The Arbitrator determined that Skelton was discharged for being "rude, arrogant and insubordinate to Lynch and Conlon on the telephone in refusing to divulge his Grand Jury hours and in telling Lynch that regardless of the wishes of his supervisors he would continue to do what he wanted." He further determined that Skelton disobeyed a direct order by refusing to report to work in response to Moro's letter when he should have reported to work as directed and then later filed a grievance under ordinary procedure if dissatisfied with Moro's direction. The Arbitrator thus found that Skelton, an employee with a record that included two instances of discipline in the past, was terminated for just cause because he "took matters into his own hands" and showed little sign that he is now "willing to back away from his self-will and to give into the reasonable rules of command."

The Arbitrator thus did not determine that Skelton was discharged because he

---

1. The Union additionally argues that (1) no one had ever been disciplined for failure to report to work on a day when he was serving on jury duty; (2) that Columbia never discussed its demands on Skelton with the Union before termination and (3) Columbia did not contest that had Skelton reported for work he might have

been late for or missed jury duty. However proper or improper these acts or omissions might have been, they are not subjects of the collective bargaining agreement and do not aid in the argument that the arbitrator exceeded his authority under that agreement. No other theory is advanced by petitioner.

was fulfilling his civic duty at his employer's displeasure, a finding that would have contravened public policy, but that Skelton was discharged for insubordination. Indeed, his finding that Skelton refused to divulge his grand jury hours amounts to a *de facto* finding that Skelton himself was in violation of the collective bargaining agreement by failing to give adequate notice of his jury service. While he gave notice of the fact that he was required to serve, he did not state that his hours were such that they amounted to a less-than-half-time job, freeing him to work part time. The petitioners' contention that Columbia was in effect requiring Skelton to serve two masters thus does not follow; Skelton was only asked to make up the other half of a full day's work. This requirement would not interfere with Skelton's jury duty and thus does not run counter to public policy.[2]

*Conclusion*

The petition is denied and the Arbitrator's Opinion and Award is affirmed. Judgment will be entered dismissing the petition without costs.

It is so ordered.

---

2. Skelton contends that the possibility that he might have had to make an arrest at the end of his shift might have resulted in his late arrival for jury duty. Columbia does not contest the possibility of an arrest late in the shift, however, it does note that Skelton's arrest record in the past was low. In any event, the fact that Skelton was given two hours between the end of his shift and the start of the jury day renders this threat negligible.